**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **GEORGE F. ALDRIDGE, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:18-cv-00259-SNLJ** |
| | ) | |
| **NINA HILL,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff, a prisoner in the Missouri Department of Corrections ("MDOC"), filed this lawsuit under 42 U.S.C. § 1983 alleging violations of his constitutional rights pertaining to medical care he received from defendant nurse practitioner Nina Hill. Currently pending before the Court are defendant Hill's motion for summary judgment [Doc. 49] and plaintiff's motion to strike [Doc. 62].

Plaintiff has spent more than a year delaying his response to the motion for summary judgment, which was filed June 25, 2020. He requested and received from this Court an extension of discovery and served subpoenas on Anne Precythe, the Director of MDOC, and he obtained an extension of time in which to file his response to summary judgment.

On December 14, 2020, this Court, while investigating whether and when the subpoenas had been served on Precythe, advised plaintiff that his "response shall be due 21 days after the subpoenaed parties provide documents to the plaintiff" and "plaintiff

shall notify the Court if he does not timely receive a response to the subpoenas after receiving confirmation that the subpoenas had been served." [Doc. 85 at 3.]

On February 25, 2021, this Court learned that the subpoenas in question had in fact been served on October 29, 2020. Thus, the Court advised plaintiff he should advise whether he had received a response and, if not, he should file a motion to enforce the subpoenas. In fact, the Office of the General Counsel for MDOC represented that Precythe had responded by letter to plaintiff dated November 10, 2020. The letter generally advised plaintiff to seek the documents from other sources and constituted MDOC's response to the subpoenas. Counsel for MDOC also contacted the Court when advised of the dispute and explained that although he had sent his letter response to plaintiff, that he could not be sure plaintiff had received the response. Plaintiff moved to enforce the subpoenas, which this Court granted in party and denied in part. Counsel for defendant Hill and MDOC Counsel were ordered to each file a written update with the Court regarding their efforts to provide plaintiff with the relevant documents by April 30, 2021.

Defendant and MDOC counsel so-responded and assured the Court that appropriate documents had been sent to plaintiff. Plaintiff was dissatisfied and again filed motions to obtain the documents he sought, and he also complained that he was missing other, unrelated property and documents. Only some of the documents appeared to involve this case. It appeared that defendant and MDOC had responded appropriately to the Court's order. However, to avoid future complaints regarding the availability of the exhibits to defendant's summary judgment motion, the Court ordered the Clerk to

2

provide plaintiff with a complete copy of the briefing and exhibits for defendant Hill's motion for summary judgment.

Plaintiff continued to complain about his lack of access to documents [*e.g.*, Doc. 139, Doc. 140] and sought to delay filing his response to summary judgment until after his subpoenas were "enforced."  Plaintiff maintained that MDOC was wrongfully withholding documents and that he was unable to respond to summary judgment.  This Court required defendant and MDOC to respond to his allegations [Doc. 141].  It was revealed that plaintiff had access to all of his legal materials and is permitted to take one cubic foot of materials to his cell at a time.  Plaintiff was simply choosing not to take any documents.  This Court offered plaintiff an addition extension of time in which to file a response memorandum and advised plaintiff that, if he chose not to do so, then the Court would rule on the motion without plaintiff's response.  [Doc. 147.]

Plaintiff filed an interlocutory appeal and has filed numerous other documents, but he did not respond to the motion for summary judgment.  The Court will thus proceed with ruling on the remaining motions.

## I.    Factual Background

Plaintiff claims that defendant Nurse Practitioner Nina Hill failed to provide appropriate medical treatment for numerous medical conditions, including high blood pressure, hyperlipidemia, an enlarged prostate, a leaking bladder, osteoporosis, a growth on his left knee, joint pain in his left elbow, right knee, and lower back, a stroke, migraine headaches, neuropathy in the feet and legs, dizziness, blackouts, right testicular pain, diabetes, hearing loss, sleeping problems, numbness in the pubic area, a concussion, and

a urinary tract infection. Plaintiff claims Hill purportedly refused to render appropriate treatment because he was in administrative segregation. Plaintiff claims defendant Hill failed to provide an extra pillow for his back pain as well as other lay-ins, including lay-ins for a knee brace, front cuffing, Depends, and orthotics. Plaintiff seeks monetary damages and injunctive relief in the form of specialist consultations.

Plaintiff failed to respond to defendant's Statement of Uncontroverted Material Facts ("SUMF"), and they are admitted for the purpose of summary judgment as a result. Mo. E.D. L. R. 4.01(E). The facts are summarized as follows:

Plaintiff was transferred to SECC on August 20, 2015. SECC is a level 5, or maximum security, facility. The lay-ins a medical provider may prescribe for a patient are subject to the discretion of the correctional staff. Defendant Hill does not have discretion to override security decisions pertaining to a patient's lay-ins. Hill did not have the authority to provide plaintiff with an extra pillow and, in any event, he could have used items such as additional clothing for cushioning as needed. Hill also did not have the authority to provide plaintiff with his desired "no kneeling" lay-in but, even so, did not believe that limited kneeling of twenty to thirty seconds would present an excessive risk to plaintiff's health.

Benign prostatic hyperplasia ("BPH"), also known as prostate gland enlargement, is a common age-related condition in which the prostate becomes enlarged. BPH may cause issues with urine flow. Treatment for BPH includes monitoring of symptoms with lifestyle changes, including exercises to strengthen the pelvic floor muscles, medications to reduce the symptoms associated with BPH, or, if medically indicated, surgery to

4

remove all or part of the prostate. A digital rectal examination ("DRE") is also necessary to assess the prostate. Laboratory tests measuring a patient's prostate-specific antigen ("PSA") are used to determine the risk of prostate cancer. If a patient exhibits significant abnormalities such as escalating PSA levels over a period of time or a prostate tumor, an on-call oncologist is consulted to assess the next steps for treatment, which may include a biopsy or urology assessment. Most patients can be actively monitored through laboratory testing and DREs. In plaintiff's case, defendant Hill determined a consultation with the oncologist was not medically necessary because plaintiff's PSA levels did not consistently increase over a period of time. A DRE also revealed no significant prostate abnormalities, such as a mass.

Plaintiff did not require a lay-in for diapers, mesh pads, or similar items for his purported leaking bladder. Neither defendant Hill nor SECC medical staff observed objective evidence, such as urine stains or smells, supporting plaintiff's claims of a leaking bladder at any time. Although defendant Hill understands that plaintiff says his glasses were confiscated, Hill did not confiscate his glasses. After Plaintiff's glasses were confiscated, Hill consulted with plaintiff's optometrist, Dr. Lee Browning, regarding plaintiff's eye concerns, and referred plaintiff to Dr. Browning for further evaluation.

Plaintiff's medical records do not reflect that he complained of "blackouts" to Hill during his treatment at SECC, nor did Hill observe "blackouts." Plaintiff did not complain to Hill of symptoms suggestive of neuropathy in his feet and legs. His complaints pertaining to his feet and legs were musculoskeletal (rather than neuropathic)

in nature. Plaintiff did not complain to Hill of numbness in his pubic area. Plaintiff also did not complain to Hill of difficulty sleeping, or insomnia. In any event, insomnia is not a condition that is pharmacologically treated in the prison setting. If plaintiff had complained to Hill of insomnia, Hill would have advised him as to appropriate sleep hygiene or referred him to mental health to help determine the cause of his insomnia. Plaintiff also exhibited no symptoms of osteoporosis and Hill was not aware of any concerns regarding osteoporosis.

Plaintiff's medical records do not reflect that he suffered a stroke during Hill's treatment of him at SECC. Plaintiff's medical records also do not reflect that he suffered a concussion at any time during Hill's treatment of him. Degenerative joint disease ("DJD"), which is also referred to as osteoarthritis, is an irreversible condition which refers to age-related degenerative changes in the joints. At plaintiff's age, the vast majority of patients have experienced deterioration of their joints. DJD and arthritis are treated conservatively first, through pain medications such as acetaminophen and nonsteroidal anti-inflammatory drugs ("NSAIDS"), and adopting healthy lifestyle choices such as a healthy diet and remaining physically active. If the joint deteriorates significantly and/or a patient is unable to perform activities of daily living ("ADLs"), more invasive methods of treatment can be pursued, such as injections or surgery. However, considering the complications that can arise from surgery are often irreversible, medical professionals typically start with conservative treatment first.  Defendant Hill prescribed a course of conservative treatment for plaintiff's complaints of chronic joint pain, including those related to his left elbow, knees, and lumbar spine, which consisted

6

of examinations, lay-ins for a bottom bunk and no squatting, medications, including

Meloxicam, Prednisone, analgesic balm, aspirin, and Zonisamide, and x-rays. Hill

believed lay-ins for a knee brace, front cuff, and orthotics were not medically necessary.

Hill evaluated the nodule on plaintiff's left knee on March 30, 2017. She ordered

an x-ray of the left knee which showed that the nodule was a fluid-filled cyst that

required no further medical intervention.

Diabetes is a condition characterized by too much sugar in the blood. Type

2 diabetes is a chronic condition that can develop over time. Diabetes is usually

diagnosed with the hemoglobin A1c test, which measures the average blood sugar level

for the past two to three months. Normal levels are below 5.7%, and a result between

5.7% and 6.4% is considered prediabetes. An A1c level of 6.5% or higher means a

patient has diabetes. If a patient has prediabetes, no medication is necessary. Rather, a

patient should implement lifestyle changes, such as weight loss, healthy eating, and

regular exercise. Plaintiff's hemoglobin A1c levels did not exceed 6.5% at SECC, and

Hill advised him to adopt healthy lifestyle choices in order to prevent the development of

diabetes.

Hill did not refuse to treat plaintiff for any urinary tract infection ("UTI"). Hill

also treated plaintiff's high blood pressure and hyperlipidemia. Hill sought to

prescribe Lisinopril (an ACE inhibitor that treats hypertension) for plaintiff's high blood

pressure on October 26, 2015, but he refused. Hill ordered laboratory testing to assess

plaintiff's cardiovascular condition on May 10, 2016, put plaintiff refused the tests.

Plaintiff agreed to laboratory testing on November 15, 2016, and Hill ordered laboratory

testing (though Plaintiff continued to refuse medications). Plaintiff then agreed to take Lisinopril and, on January 9, 2017, Hill prescribed it.   Hill also monitored Plaintiff's hyperlipidemia through chronic care appointments and laboratory testing (when plaintiff agreed) and prescribed Atorvastatin (a medication which treats high cholesterol and triglyceride levels) when plaintiff's laboratory testing showed elevated triglycerides. It is Hill's opinion that plaintiff's reported dizziness was vasovagal in nature and arose from dehydration and sudden movements. Hill therefore advised plaintiff to hydrate and as to appropriate positional changes.

On June 29, 2016, Hill saw plaintiff for complaints of difficulty hearing. Plaintiff, however, had no difficulty understanding conversational speech.  Plaintiff similarly exhibited no hearing issues at an appointment with Dr. Ashokkumar Chada on June 29, 2017.

On November 16, 2017, Dr. Philip Tippen saw plaintiff, who reported a right testicular lump. Dr. Tippen did not palpate a lump and did not order diagnostic testing or medications. Plaintiff was transferred to Eastern Reception, Diagnostic and Correctional Center in or around December 23, 2017.

Hill avers that she provided plaintiff with appropriate medical treatment for his medical conditions and that she did not base her treatment of plaintiff on his housing assignment. Hill did not refuse to prescribe pain medications for him because, as he alleges, he is a "recovering drug addict." Hill did not deny plaintiff pain medication or any other treatment due to cost.  In addition, plaintiff was not harmed or injured by the medical treatment Hill rendered him.

8

## II.      Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

## III.     Discussion

Plaintiff claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated by defendant's actions.  A prisoner's Eighth Amendment rights are violated if prison officials exhibit deliberate indifference to the prisoner's serious

medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). It is a violation of the Eighth Amendment to deny medical care for a serious medical need that results in pain and suffering. *Estelle*, 492 U.S. at 103.  A claim of deliberate indifference involves both an objective and subjective standard. *Id.* It is the plaintiff's burden to demonstrate: (1) he suffered objectively serious medical needs and (2) prison officials actually knew of but deliberately disregarded those needs. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

"To be objectively serious, a medical need must have been 'diagnosed by a physician as requiring treatment' or must be 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). Under the subjective standard, an official is deliberately indifferent if she knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference. *Farmer*, 511 U.S. at 837. Medical malpractice, inadvertent failure to provide adequate medical care, or simple negligence do not amount to a constitutional violation. *Dulany v. Carnahan*, 132 F.3d 1234, 1239, 1243 (8th Cir. 1997).

Further, a mere difference of opinion between plaintiff and his physician about which treatment is appropriate does not give rise to an Eighth Amendment claim. *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir. 1991). "Inmates do not have a constitutional right to any particular type of treatment." *Toney v. Hakala*, No. 4:10-cv-20156-JAR, 2013 WL 5406448, at *19 (E.D. Mo. Sept. 25, 2013).

First, not all of plaintiff's complaints constitute objectively serious medical conditions.  Defendant concedes that plaintiff's high blood pressure, hyperlipidemia, BPH, joint pain, headaches, prediabetes concerns, urinary tract infections, and eye-related complaints constitute objectively serious medical conditions. Other of plaintiff's complaints, however, do not.  In particular, there is no evidence that plaintiff suffered from osteoporosis, stroke, neuropathy, blackouts, sleeping problems, or a concussion while housed at SECC.  Plaintiff's "bare assertion[s]" are insufficient to demonstrate that he had objectively serious medical needs. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994).   Plaintiff further did not exhibit objective evidence to support claims of a leaking bladder, so he could not have a serious medical need for diapers or similar accommodations.

Plaintiff's right testicle complaints, purported dizziness, alleged hearing loss, and left knee cyst are also not objectively serious medical needs. Plaintiff did not require medications or diagnostic testing for his right testicle. Plaintiff also did not require treatment for his reported dizziness but instead was advised to hydrate and make appropriate positional changes. Plaintiff also did not require treatment for the fluid-filled cyst on his left knee. While plaintiff complained of difficulty hearing, he did not exhibit any significant difficulty hearing on June 29, 2016, to Hill, or on June 29, 2017, to Dr. Chada, and these providers determined no medical intervention was necessary.

As for plaintiff's vague allegations that he suffered from numbness in the pubic area, he did not complain of such numbness when Dr. Chada performed a DRE or when Dr. Tippen examined plaintiff's testicles.  It is also not clear that vague allegations of

11

numbness would rise to the level of an objectively serious medical need, but it is certain that plaintiff has not shown defendant knew of and disregarded any excessive risk to plaintiff's health.

Indeed, it is apparent and undisputed that Hill provided constitutionally adequate medical care for plaintiff.  Hill's treatment was not based on plaintiff's housing placement as he alleges.  Hill saw plaintiff at least 25 times while he was housed at SECC, and she rendered treatment—diagnosing, prescribing medication, and ordering tests—for plaintiff's numerous medical complaints including his chronic joint pain, hypertension,, high blood pressure, and BPH.

Although plaintiff claims  Hill denied him treatment for a UTI, medical records show Hill prescribed antibiotics for his UTIs.  Hill saw plaintiff in follow-up appointments and his UTIs had resolved. Plaintiff claims his diabetes was untreated, but medical records show that his blood tests reflected that he did not require medication or other medical treatment.

Defendant Hill also treated plaintiff's complaints of chronic joint pain.  She examined plaintiff for complaints regarding his left elbow, right knee, and lower back, and she ordered treatment including x-rays, lay-ins, and medications.  His diagnostic results confirmed he had degenerative osteoarthritis, which could be treated conservatively.   Hill provided a lay-in for plaintiff when he reported he had difficulty squatting.  Plaintiff's allegations regarding loss of range of motion in his joins are not supported by the medical record; when non-party Dr. Chada examined plaintiff on June 29, 2017, he noted no knee abnormalities and normal range of motion in plaintiff's left

12

elbow, ankles, and feet.  A nurse observed plaintiff walking with a brisk, steady gait, knees bending freely, on July 11, 2017.

As for plaintiff's allegations regarding his enlarged prostate, the records show Hill implemented a thorough course of treatment for plaintiff's BPH which included evaluations, laboratory testing, urine cultures and PSA tests, an x-ray of plaintiff's abdomen, a DRE (which plaintiff required a different provider to administer), and Tamsulosin.  Defendant continuously monitored plaintiff's BPH symptoms and PSA levels, which did not escalate over the course of Hill's treatment but instead decreased from May to August, 2017.  Hill thus determined that an oncology consult was not required.

The medical records also show defendant Hill appropriately addressed plaintiff's complaints of dizziness.  She explained to plaintiff that the dizziness was vasovagal in nature and arose from dehydration and sudden movements. She thus educated plaintiff regarding how to avoid dizziness, that is, by increasing fluid intake and standing up slowly.

Plaintiff disagrees with Hill's medical judgments regarding lay-ins, but such disagreement does not constitute an Eighth Amendment violation.  *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Plaintiff does not have a constitutional right to any particular type of treatment or accommodation. *Toney*, 2013 WL 5406448 at *19. Plaintiff's medical records show that Hill thoroughly assessed plaintiff and determined that he did not require a knee brace, a lay-in for front cuffs, diapers, orthotics, or an extra pillow. Moreover, as Hill explained, she was unable to provide a lay-in for no kneeling or

13

an extra pillow due to security restrictions.  Plaintiff cannot hold Hill liable for the perceived acts or omissions of others.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Regardless, it is apparent from the ample record that Hill did not disregard plaintiff's medical conditions; she provided plaintiff lay-ins which she believed were medically necessary, such as lay-ins for a bottom bunk and no squatting. Hill's refusal to implement plaintiff's preferred course of treatment does not violate the Constitution, particularly where Hill based her decisions on plaintiff's objective clinical symptoms and her medical knowledge. *Vaughn v. Gray*, 557 F.3d 904, 909 (8th Cir. 2009).

Plaintiff's claim that Hill had his prescribed glasses confiscated appears to be without support.  Hill explains that the glasses were confiscated by others because he misused his lay-in.  Hill referred plaintiff to his optometrist.  There's no evidence that Hill ignored a risk of harm to plaintiff.

As for all of plaintiff's allegations pertaining to non-serious medical needs, described above, the evidence shows defendant Hill did not ignore the medical needs about which she knew.  Defendant was unaware of plaintiff's complaints of neuropathy, numbness, blackouts, and insomnia.  Although plaintiff reported a fall on October 4, 2016, Hill opines that any alleged fall resulted form plaintiff's self-imposed hunger strike and dehydration, not "blackouts."  Nonparty Dr. Birch noted no neurological abnormalities suggestive of a concussion of plaintiff's purported fall.  Plaintiff also exhibited no signs of a stroke at SECC.

Although Hill was aware of plaintiff's hearing loss complaints, Hill and other providers determined there was no hearing problem.

14

Additionally, Hill's and other providers' efforts to treat plaintiff's medical complaints were impeded by plaintiff's frequent refusals of care and failures to follow medical advice.  Plaintiff complains that Hill failed to treat his high blood pressure, but records show he refused Hill's offer to prescribe Lisinopril and other medication. Plaintiff also refused testing and treatment for his hyperlipidemia.  When plaintiff complained of headaches and requested Anacin, Hill offered an alternative of aspirin with caffeine, which contains the same ingredients as Anacin.  Plaintiff refused, and he also refused her offers to prescribe other medications.  Hill also offered plaintiff medication to treat his weak urine stream, but he refused.

To the extent plaintiff complains of delayed medical treatment, he has provided no verifying medical evidence to establish the detrimental effect of any perceived delay. *Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006).  But moreover, there is simply no evidence in the record tending to show that Hill was ever subjectively aware of a substantial risk of serious harm to plaintiff and then ignored that risk.

This Court has thoroughly considered defendant's substantial, detailed motion, memorandum, and SUMF and exhibits.  As indicated above, despite numerous opportunities to do so, plaintiff has not filed a response.  Instead, plaintiff complained about documents pertaining to the pillow restrictions for which he blames Hill.  Even if plaintiff had such documents, they would not change the deliberate indifference analysis.

Plaintiff's only direct response to Hill's motion for summary judgment is a motion to strike her affidavit in support and her SUMF as "perjured." [Doc. 62.]  As an initial matter, the federal rules do not provide a mechanism for striking portions of defendant's

15

summary judgment filing.  *See Stockdale v. Stockdale*, No. 4;08cv1773 CAS, 2010 WL 1329593, at *1 (E.D. Mo. April 6, 2010). "Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike."  2 James W. Moore, et al., *Moore's Federal Practice* § 12. 37[2] (3rd ed. 2010). Even so, the Court will address plaintiff's improper motion in the interests of justice.

Plaintiff first argues that the declaration is perjured because certification of his medical records was executed on a date after Hill's execution of her declaration. He also believes, without support, that his medical records were altered.  As explained in defendant Hill's response in opposition [Doc. 65 at 3], plaintiff's arguments are based on a misunderstanding of the records attached to her declaration.

As for plaintiff's argument that the declaration and medical records constitute inadmissible hearsay, they are admissible under the business records exception set forth in Federal Rule of Evidence 803(6).  Further, certain statements in the records plaintiff contends are "hearsay upon hearsay" are not offered to prove the truth of the matter asserted but rather the reasoning behind treatment decisions.

Plaintiff's motion to strike will be denied.

Accordingly,

IT IS HEREBY ORDERED that defendant Nina Hill's motion for summary judgment [Doc. 49] is GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion to strike [Doc. 62] is DENIED.


So ordered this 18th day of February, 2022.


_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE